*Cherokee Nation, et al. v. Wade Free, et al.*

# EXHIBIT 1 TO COMPLAINT

# FIVE TRIBE WILDLIFE MANAGEMENT RECIPROCITY AGREEMENT

This Five Tribe Wildlife Management Reciprocity Agreement ("Reciprocity Agreement") was formed through consultations among the Cherokee Nation, the Chickasaw Nation, the Choctaw Nation of Oklahoma, the Muscogee (Creek) Nation, and the Seminole Nation of Oklahoma, and it is hereby made and entered into by and among the Nations signatory hereto ("Nations" or "Nation," as indicated by context).

## ARTICLE 1
## PURPOSE

WHEREAS, the Nations are each independent and federally recognized Indian Tribes, with governments organized under their own constitutions and codes formed by and through the exercise of Tribal sovereignty and which manifest and exercise each Nation's inherent rights to Tribal self-government as secured by Federal law;

WHEREAS, the Nations each possess and exercise the powers of inherent sovereignty over their territories, as recognized and affirmed by Federal law, and all Indian persons within each Nation's Indian country, irrespective of citizenship or membership, 25 U.S.C. § 1301(2); *cf. generally U.S. v. Lara*, 542 U.S. 193 (2004) (confirming that 1991 amendment to Indian Civil Rights Act operated to expand the federally recognized scope of inherent Tribal criminal jurisdiction);

WHEREAS, various courts have confirmed each Nation has a reservation that constitutes Indian country under Federal law, 18 U.S.C. § 1151, and under such Federal law, each Nation has an inherent, recognized, and affirmed sovereign right and authority relating to the regulation and management of wildlife therein;

WHEREAS, each Nation is signatory to treaties that recognize, affirm, and protect its inherent rights to sovereignty and self-governance free from the encroachment of laws enacted by any State;

WHEREAS, among these rights, each signatory Nation's inherent, recognized, and affirmed sovereignty vests it with the authority "to manage the use of its territory and resources by both members and nonmembers," including wildlife resources. *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335 (1983) (citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137 (1982); *White Mountain Apache v. Bracker*, 448 U.S. 136, 151 (1980); *Montana v. United States*, 450 U.S. 544 (1981); 18 U.S.C. § 1161(b); 25 U.S.C. §§ 1321(b), 1322(b) (footnote omitted)); *see also* 18 U.S.C. § 1165;

WHEREAS, Congress imposed as a condition on Oklahoma's formation as a State of the Union that nothing in the new state's constitution could lawfully be construed as limiting, impairing, or otherwise affecting the rights of Indians or the unique legal powers of the United States in Tribal affairs, which powers are expressly delegated to the federal government by the United States Constitution. Oklahoma Statehood Enabling Act of 1906, Pub. L. 59-234, 34 Stat. 267;

**EX. 1**

WHEREAS, Federal courts have confirmed this condition of the Oklahoma Enabling Act as a continuing constraint on Oklahoma jurisdiction within Indian country with respect to Indians, *see, e.g., Indian Country, U.S.A. v. Oklahoma Tax Com'n*, 829 F.2d 967 (10th Cir. 1987) ("The language of the Oklahoma act, read in its historical context, suggests that Congress intended to preserve its jurisdiction and authority over Indians and their lands in the new State of Oklahoma until it accomplished the eventual goal of terminating the tribal governments, assimilating the Indians, and dissolving completely the tribally-owned land base—events that never occurred and goals that Congress later expressly repudiated.");

WHEREAS, in December 2021, the State of Oklahoma, acting by and through its Governor, ended intergovernmental agreements the State had previously formed with the Cherokee Nation and Choctaw Nation of Oklahoma, which agreements memorialized and established mutually beneficial and effective accommodations of separate sovereign interests and rights and neutralized the likelihood of unnecessary intergovernmental conflict by implementing a system for the cooperative management of hunting and fishing;

WHEREAS, the Nations, as an exercise of their respective sovereignties and in the interests of effective inter-Tribal relations and cooperation in the provision of programs to our respective members and citizens, when appropriate, have, through the Inter-Tribal Council of the Five Civilized Tribes, enacted Resolution No. 22-05 in January 2022 and, as a further act of intergovernmental cooperation, formed the Five Tribes Wildlife Management Working Group in April 2023 to, among other things, "develop and propose a cooperative plan . . . to provide citizens and members of the Five Tribes with expanded access to hunting and fishing privileges within the Nations' respective reservations, consistent with conservation standards and applicable tribal and federal law" as well as each Nation's own sovereignty, including its own treaty rights, laws, and conservation standards;

WHEREAS, the Nations recognize the importance of the conservation, management, protection, and enhancement of wildlife resources and habitat for the scientific, educational, recreational, aesthetic, and economic benefits to present and future generations; and

WHEREAS, the Nations, as an exercise of their respective sovereignties and in the interests of effective inter-Tribal government relations and cooperation have formed and entered this Reciprocity Agreement to: (1) recognize and give effect under its own laws each other signatory Nation's licensure, permitting, or authorization of its own members' or citizens' hunting, fishing, trapping, and/or gathering rights or permissions, *provided*, that the hunting, fishing, trapping, and/or gathering activities of any member or citizen of a signatory Nation shall be subject to and must conform with the laws of the signatory Nation on whose reservation such activities occur; and (2) further deepen our intergovernmental cooperation "to support wildlife management and conservation efforts of our neighboring reservations in a way that is sustainable and consistent with each tribe's laws, traditions, culture, and for the benefit of future generations," Inter-Tribal Council of the Five Civilized Tribes, Resolution No. 22-05 (January 14, 2022).

## ARTICLE 2
## RECIPROCAL AUTHORIZATIONS AND WILDLIFE CONSERVATION COOPERATION

**NOW THEREFORE,** the Nations signatory hereto agree as follows:

A.  By executing this Reciprocal Agreement, each Nation certifies it has enacted law to regulate wildlife within its reservation, which laws authorize and regulate its members' or citizens' hunting, fishing, trapping, and/or gathering activities as well as the like activities of members or citizens of other federally recognized Indian tribes ("Wildlife Laws"). Each signatory Nation shall make available current copies of its Wildlife Laws, including any amendments thereto (including amendments enacted for purposes of implementing this Reciprocity Agreement), to each other signatory Nation.

B.  Each signatory Nation hereby recognizes and will give effect under its own Wildlife Laws each other signatory Nation's licensure, permitting, or authorization of its own members' or citizens' hunting, fishing, trapping, and/or gathering rights or permissions, *provided*, that the hunting, fishing, trapping, and/or gathering activities of any member or citizen of a signatory Nation shall be subject to and must conform with the laws of the signatory Nation on whose reservation such activities occur.

C.  By February 28 of each year, each signatory Nation will report to each other signatory Nation basic harvest data collected from its members or citizens pursuant to its laws, as provided in section D. Such data will include, at minimum, all deer and turkeys harvested during the previous season, species, age class, sex, antler points, method of harvest, county of harvest, and reservation of harvest. In no event will any Nation require or report the personal information regarding any member or citizen in such report, and each signatory Nation will take all necessary steps to prevent the transmission of any data it has regarding another signatory Nation's members or citizens to any third party.

D.  Each signatory Nation will enact law to require its members or citizens to report, at minimum, all harvests of deer and turkey to an appropriate wildlife agency within the signatory Nation's government, irrespective of where the harvest occurred. Such reports will include, at minimum, the information necessary for the signatory Nation's designated agency to prepare the report required at section C. At the discretion of the Nation on whose reservation the harvest occurred, animals harvested other than deer or turkey may be subject by a Nation's Wildlife Laws to reporting requirements in addition to the minimum stated herein.

E.  Each signatory Nation will enact law to prohibit its members or citizens from harvesting separate bag limits within its reservation or elsewhere in the State of Oklahoma. For example: if a cumulative total of four (4) antlerless and two (2) antlered deer may be taken, excluding harvests during special draws and holiday bonus hunts as outlined in the applicable law, no signatory Nation may allow one of its members or citizens to take more than that cumulative total, regardless of where such harvests occur.

F. Each signatory Nation will enact law to require its members or citizens who seek to hunt, fish, trap, and/or gather on another signatory Nation's reservation to comply fully with the wildlife laws of the other Nation that apply generally to such activity. Such enactment will further specify that each member or citizen is responsible for knowing and adhering to the laws of the other Nation when they seek to hunt, fish, trap, and/or gather on that other Nation's reservation, and each member or citizen may be subject to prosecution by the signatory Nation for failing to abide by its laws when hunting, fishing, trapping, and/or gathering on that Nation's reservation.

G. Each signatory Nation will coordinate with each other signatory Nation to provide members and citizens with information regarding the laws applicable within each reservation, including information concerning licensing, tagging, permitting, and other matters pertaining to wildlife conservation. Each signatory Nation will designate and direct an appropriate agency within its government to serve as an information resource on such matters.

H. Each signatory Nation will coordinate with each other signatory Nation with respect to the implementation of this agreement, including full cooperation with respect to each Nation's enforcement of its own Wildlife Laws within its reservation for the purposes of safe hunting and fishing and wildlife conservation.

## ARTICLE 3
## GENERAL PROVISIONS

A. <u>No waiver; retention of rights.</u>  Nothing herein, even upon its termination, may be considered or deemed to be a concession by any Nation on any claim to jurisdiction, an admission respecting the same, or a waiver of any right to challenge such a claim. Each signatory Nation expressly and unequivocally reserves its sovereign immunity from any uncontested suit in any forum, and nothing herein may be considered or deemed a waiver of such immunity.

B. <u>Effective Date.</u> This Reciprocity Agreement shall be considered and deemed effective with respect to each signatory Nation upon that Nation's execution hereof and in relation to each Nation that became signatory hereto prior to such later execution and, if executed by an additional Nation thereafter, upon that Nation's later joining of this Reciprocity Agreement.

C. <u>Termination.</u>  Any signatory Nation, for any reason, may withdraw from this Reciprocity Agreement by delivering written notice of such withdrawal to each other signatory Nation at the addresses set forth below. Such withdrawal will take effect one hundred twenty (120) days after delivery of such written notice, *provided*, that neither the delivery of notice nor withdrawal shall excuse any signatory Nation from its duty under article 2, section C. to report to the other signatory Nations data pertaining to harvests made during the notice period.

**To Cherokee Nation:**

    Cherokee Nation
    Office of the Attorney General
    P.O. Box 1533
    Tahlequah, Oklahoma 74465

**To Chickasaw Nation:**

    Office of the Governor
    The Chickasaw Nation
    P.O. Box 1548
    Ada, Oklahoma 74821

**To Choctaw Nation of Oklahoma:**

    The Choctaw Nation of Oklahoma
    Attn: Legal Department
    1802 Chukka Hina
    Durant, Oklahoma 74701

**To Muscogee (Creek) Nation:**

    Muscogee (Creek) Nation
    Office of the Attorney General
    P.O. Box 580
    Okmulgee, Oklahoma 74447

**To Seminole Nation of Oklahoma:**

    Office of the Assistant Chief
    Seminole Nation of Oklahoma
    36645 US-270
    Wewoka, Oklahoma 74884

D. <u>Common Interest; Mutual Defense.</u> The Nations have formed this Reciprocal Agreement as an exercise and manifestation of the significant government interest each has in the subject matter. While each Nation reserves its sovereign right to act independently with respect to the needs and concerns of its respective members or citizens, each also hereby commits to a common interest in protecting the integrity of this Reciprocal Agreement. Each Nation further commits to engage cooperatively and jointly in the event of any future legal challenge to: (1) any signatory Nation's sovereignty or rights as exercised within the scope of this Reciprocal Agreement and (2) the exercise of a right secured within the scope of this Reciprocal Agreement by any signatory Nation's member or citizen. In the event of any such future legal challenge, the signatory Nations will

endeavor to work together in cooperation and in accord with our manifest common interest in the subject matter for purposes of protecting each Nation's sovereignty and rights to self-government.

E. **Amendment.** This Reciprocal Agreement may be amended by a writing signed by each signatory Nation in accord with its own laws.

IN WITNESS WHEREOF, the Nations signatory below have each caused this Reciprocal Agreement to be executed by its duly authorized officials as of the dates set forth below and in accord with the executing Nation's own laws.

**THE CHEROKEE NATION**

_____
Chuck Hoskin, Principal Chief
Dated: 7/11/2024

**THE CHICKASAW NATION**

_____
Bill Anoatubby, Governor
Dated: July 11, 2024

**THE MUSCOGEE (CREEK) NATION**

_____
David W. Hill, Principal Chief
Dated: 7-11-2024

**THE CHOCTAW NATION OF OKLAHOMA**

_____
Gary Batton, Chief
Dated: 7-11-24

**THE SEMINOLE NATION OF OKLAHOMA**

_____
Lewis Johnson, Principal Chief
Dated: 7-11-2024