*Cherokee Nation, et al. v. Wade Free, et al.*

# EXHIBIT 12 TO COMPLAINT

**GENTNER DRUMMOND**
**ATTORNEY GENERAL**

November 13, 2025

<u>Via E-mail</u>

Director Wade Free
Oklahoma Department of Wildlife Conservation
1801 North Lincoln Boulevard
Oklahoma City, OK 73105
wade.free@odwc.ok.gov

Dear Director Free:

I write with considerable frustration regarding the Oklahoma Department of Wildlife Conservation's apparent disregard for my November 6, 2025, legal opinion concerning enforcement of state wildlife laws against tribal members hunting and fishing in Indian Country.

To date, I have received no response to my letter, nor any indication that ODWC has rescinded or modified its October 7, 2025, directive to game wardens. This silence is deeply troubling. My office provides legal counsel to state agencies to protect the State from liability and ensure compliance with federal and state law. When that counsel is ignored without explanation, it puts the State, the agency, and individual officers at significant legal and financial risk.

Let me be abundantly clear about the legal deficiencies in ODWC's current enforcement policy:

First, the policy rests on a misreading of *Stroble v. Oklahoma Tax Commission*. As I explained in detail, *Stroble* simply declined to extend *McGirt* to civil tax jurisdiction. The Oklahoma Supreme Court explicitly stated it was not addressing criminal jurisdiction, which falls exclusively to the Oklahoma Court of Criminal Appeals under Article VII, Section 4 of the Oklahoma Constitution.

Second, the applicable state law authority is *City of Tulsa v. O'Brien*, 2024 OK CR 31, which requires a particularized, case-specific application of the *Bracker* balancing test. Your policy cannot survive this analysis, particularly given that:

    a. Each of the Five Tribes has enacted comprehensive wildlife codes governing their members' hunting and fishing activities;
    b. These codes were developed in consultation with ODWC officials, who raised no objections;
    c. The tribes actively enforce these codes through their own conservation officers;

313 N.E. 21ST STREET • OKLAHOMA CITY, OK 73105 • (405) 521-3921 • FAX: (405) 521-6246



**EX. 12**

    d. Cross-deputization agreements and reciprocity provisions ensure coordination between tribal and state authorities; and
    e. The tribes have demonstrated their commitment to wildlife conservation, hunter safety, and respect for private property rights.

Third, ODWC's policy directly contradicts well-established federal law recognizing tribal sovereignty over hunting and fishing by tribal members on reservation lands. *See Cheyenne-Arapaho Tribes of Oklahoma v. State of Okl.*, 618 F.2d 665, 669 (10th Cir. 1980); *United States v. Felter*, 752 F.2d 1505, 1510 (10th Cir. 1985).

Fourth, the policy is an unenforceable rule under the Administrative Procedures Act and is therefore "null, void, and unenforceable." 75 O.S. § 302(E). It has not been approved by the Commission itself, but instead by a legislative committee consisting of only a few Commissioners. Because enforcement authority rests with the Commission—not a committee—the policy cannot be enforced. In the alternative, the committee's adoption and enforcement of the policy may violate the Open Meeting Act, which applies to committees exercising actual or de facto decision-making authority. *Andrews v. Indep. Sch. Dist. No. 29 of Cleveland Cnty.*, 1987 OK 40, ¶ 10, 737 P.2d 929, 931.

The practical consequences of ODWC's policy are equally troubling. I have been informed that: (a) ODWC game wardens are actively threatening and citing tribal members engaged in lawful hunting activities on reservation lands; (b) Citations are being referred to the Governor's office for prosecution by special counsel in state court; (c) Game wardens are reporting information about tribal members to their superiors, creating investigative files on individuals exercising protected treaty rights; (d) The State has appointed special counsel to prosecute at least one Chickasaw citizen for hunting on the Chickasaw Reservation without state licenses.

These enforcement actions are not merely ill-advised—they are unlawful. They expose individual ODWC officers to personal liability under 42 U.S.C. § 1983. They waste limited law enforcement and prosecutorial resources on cases that cannot succeed. And they inflict significant harm on the State's government-to-government relationships with the Five Tribes—relationships that took years to rebuild and that benefit all Oklahomans.

I am particularly troubled by reports that ODWC leadership may be acting at the direction of the Governor's office. While I respect the Governor's authority over executive branch agencies, that authority does not extend to directing agencies to violate federal law or ignore the legal counsel provided by the Attorney General. The Commission has its own statutory responsibilities and constitutional obligations that cannot be subordinated to political considerations.

As legal counsel to the Commission, I have a duty to provide you with candid advice and to protect the State's interests. I have done so. You now have a duty to follow that advice or to provide a reasoned legal explanation for declining to do so.

Accordingly, I require the following from you in writing no later than 5:00 p.m. on Monday, November 17, 2025:

**EX. 12**

    1. Confirmation that ODWC has rescinded or will immediately rescind its October 7, 2025, directive and any related enforcement policies regarding tribal members hunting and fishing in Indian Country;

    2. Confirmation that ODWC will instruct all game wardens statewide to cease enforcement of state wildlife laws against tribal members engaged in hunting and fishing activities on Indian reservations;

    3. Confirmation that ODWC will withdraw any pending citations issued to tribal members for hunting or fishing violations on Indian reservations and will notify the Governor's office and any appointed special counsel that such prosecutions should be dismissed;

    4. Confirmation that ODWC will work cooperatively with the Five Tribes to address any legitimate wildlife conservation concerns through government-to-government consultation rather than unilateral enforcement actions; and

    5. A detailed explanation of what circumstances prompted ODWC's October 7 policy change and who directed or authorized that change.

    If I do not receive this written confirmation and explanation by the deadline specified above, I will have no choice but to take appropriate action to enforce the law and protect the State's interests. I take no pleasure in the prospect of litigation between state agencies. But my paramount obligation is to the rule of law and to the protection of Oklahoma's legal and fiscal interests. ODWC's current policy threatens both.

    I strongly encourage you to engage with my office immediately to resolve this matter. My staff and I remain available to discuss these issues and to work collaboratively toward a lawful resolution that respects tribal sovereignty, protects wildlife resources, and maintains positive intergovernmental relations.

    The law on these issues is clear. The risks of continuing on the current path are substantial. And the solution is straightforward: return to the cooperative, respectful approach that has served Oklahoma and the tribes well for years.

    I await your written response.

Sincerely,

GENTNER DRUMMOND
*Attorney General*

Cc: Commissioners

**EX. 12**