*Cherokee Nation, et al. v. Wade Free, et al.*

# EXHIBIT 1 TO
# PLAINTIFFS' MOTION FOR
# TEMPORARY RESTRAINING ORDER
# AND PRELIMINARY INJUNCTION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHEROKEE NATION, et al.,  )
                          )
            Plaintiffs,   )
                          )
v.                        )   Civil Action No.
                          )
WADE FREE, et al.         )
                          )
            Defendants.   )
                          )

**SUPPLEMENTAL DECLARATION OF MATT GAMBLE**

I, Matt Gamble, declare as follows:

1. I am over eighteen years of age. I reside in Durant, Oklahoma. I am currently the Senior Manager of Wildlife Conservation in the Choctaw Nation Department of Wildlife Conservation ("CNDWC").

2. This declaration supplements my declaration dated October 21, 2025.

3. Since the ODWC announced on October 8, 2025, that it would be enforcing state laws against tribal citizens hunting on Indian Reservations, my office has received reports from Choctaw citizens of ODWC game wardens threating to prosecute them for hunting on the Choctaw Reservation without state hunting licenses or tags. My office has also received reports from ODWC game wardens that they were instructed to refer these citations to ODWC or the Governor for proceedings under a special prosecutor. After receiving these reports, I was concerned that Choctaw tribal members were hearing these reports as well and that as a result of these reports Choctaw tribal members would be intimidated out of exercising their treaty rights to hunt and fish on the Reservation under Tribal law.

1

**EX. 1**

4. Of particular concern for me was the case of a Chickasaw citizen who was allegedly hunting without a state license or tags on the Chickasaw Reservation. On November 10, 2025, I learned that the governor appointed special counsel to prosecute this Chickasaw citizen in state court in Murray County in *State v. Shepherd*, No. WL-2025-02.

5. With the upcoming deer rifle season, Choctaw citizens, especially those who hunt for subsistence, need assurance that they will not be illegally subjected to state law when relying on Tribal law and hunting licenses when hunting on the Choctaw Reservation.

6. Attached to this Declaration as Exhibit A is a true and correct copy of a letter that I sent to Director Wade Free and Chief of Law Enforcement Division Nathan Erdman of the Oklahoma Department of Wildlife Conservation ("ODWC") on November 11, 2025. I sent the letter via email to Director Free and Chief Erdman, in an effort to obtain certainty about ODWC's enforcement policies.

7. My letter asked Director Free and Chief Erdman to confirm that ODWC has retracted its policy of enforcing Oklahoma wildlife law against members of federally-recognized Indian tribes who are hunting and fishing on Indian Reservations, without regard to whether they are complying with Tribal law. I also asked for confirmation that they have stopped referring citations of Indians who committed alleged crimes on Reservations to the Governor for prosecution by a special counsel in state court.

8. I informed Director Free and Chief Erdman that if I did not receive a response by 5 p.m. on Thursday, November 13, I would understand their silence to mean that ODWC's policy continues to be to enforce Oklahoma wildlife laws against Indians hunting on the Reservation and to then refer these citations to a special prosecutor.

**EX. 1**

9. I did not receive a response from Director Free or Chief Erdman by Thursday, November 13 at 5 p.m.

10. I learned on November 13, 2025, that the Governor had appointed a special prosecutor to file charges in state court against Indians who allegedly hunt and fish in Indian country without complying with state law. On the same day, I learned that the Governor's special counsel had filed charges against a Choctaw member for hunting on the Choctaw Reservation without a state license in the case *State v. Robertson*, No. CM-2025-136. I learned on November 14 that this special prosecutor had re-filed a case against the Chickasaw citizen I mentioned in Paragraph 4, in *State v. Shepherd*, No. WL-2025-03.

11. I understand ODWC's silence and the Governor's actions to mean that ODWC will enforce Oklahoma wildlife laws against Indians in Indian country throughout the State of Oklahoma, and that they will refer citations of Indians in Indian country to a special prosecutor appointed by the Governor, and that the Governor's special prosecutor will prosecute those citations as criminal charges in state court. Unfortunately, these events appear to have confirmed the reports my office has received that I described in Paragraph 3.

12. Attached to this declaration as Exhibit B is a true and correct copy of the Reciprocity Agreement signed by the Choctaw Nation of Oklahoma, the Cherokee Nation, the Chickasaw Nation, the Muscogee (Creek) Nation, and the Seminole Nation of Oklahoma. This Agreement is kept as one of the public records of the Choctaw Nation of Oklahoma.

**EX. 1**

13. After the Reciprocity Agreement was signed in the summer of 2024, the Choctaw Nation and other tribes began implementing it. Members of each of the signatory Tribes were hunting and fishing under the terms of the Reciprocity Agreement beginning in the late summer of 2024. I did not experience any issues with implementing the Reciprocity Agreement in the hunting seasons of 2024-25. After the Reciprocity Agreement was signed, we had no issues on the Choctaw Reservation with state game wardens asserting state jurisdiction over Indians hunting and fishing under the Reciprocity Agreement until October 8, 2025.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated: November 14, 2025

Matt Gamble

**EX. 1**



# Choctaw Nation of Oklahoma
*Environmental Protection Service*
P.O. Box 1210
Durant, OK 74702
(580) 924-8280
Faith • Family • Culture

Gary Batton
Chief

Jack Austin Jr.
Asst. Chief

November 11, 2025

Wade Free, Director
Nathan Erdman, Chief of Law Enforcement Division
Oklahoma Department of Wildlife Conservation
1801 N. Lincoln
Oklahoma City, OK 73105

Director Free and Chief Erdman:

    I write to you concerning an issue of extreme importance to the Choctaw Nation of Oklahoma and its members, especially those who rely on hunting on the Choctaw Reservation for their subsistence. Specifically, I am writing to ask that you confirm that you have retracted ODWC's position, which you communicated by a public announcement on October 8, that your game wardens throughout the State of Oklahoma will enforce the state fish and game code against members of federally-recognized Indian tribes engaged in hunting and fishing in Indian Reservations anywhere in the State, even if they are complying with Tribal law. Clarification of this issue is critically important to Choctaw hunters who are now in the field or are planning to hunt in the coming weeks. Since I know this issue is also extremely important to my counterparts at the Cherokee Nation and Chickasaw Nation and has impacts statewide, I am copying them on this letter so they can also benefit from the information that you provide in response to my request below.

    As you know, the Choctaw Nation has established hunting and fishing laws and regulations to govern its members' exercise of their treaty rights to hunt and fish on the Choctaw Reservation. The Nation also enforces its hunting and fishing laws against members of other federally-recognized tribes on the Choctaw Reservation. Tribal members deserve to know that they can hunt and fish on the Choctaw Reservation without facing the threat of unlawful citation, arrest, or other interference. Leaving this matter unaddressed is unacceptable to the Choctaw Nation, especially as deer archery season is ongoing, with deer rifle season approaching. Many Tribal members rely on the deer they harvest on the Reservation as a critical part of their diets for themselves and their families. Their rights to hunt and fish are protected by federal law—specifically the Nation's treaties—and are regulated by Tribal law. Earlier this year, Tribal members believed they had certainty that they could exercise their treaty-based, Tribal law rights without state interference. But ODWC's recent actions have interfered with that certainty and left Tribal members in limbo.

    Moreover, the current situation appears to be getting worse, not better. I learned yesterday that the Governor of Oklahoma appointed special counsel in the case *State v. Shephard*, No. WL-2025-02, to prosecute a Chickasaw citizen in state court in Murray County, for allegedly hunting

Servant Leadership • Teamwork • Accountability • Integrity • Honor • Responsibility

**EX. 1**

Wade Free, Director
Nathan Erdman, Chief of Law Enforcement Division
November 11, 2025
Page 2

without a state license or tags on the Chickasaw Reservation. In addition, Choctaw Nation staff have received reports that ODWC game wardens are threatening Tribal members who hunt on the Reservation without state hunting licenses or tags with investigation or prosecution by the State. I also understand that ODWC game wardens throughout the State have been instructed to refer their citations to ODWC or the Governor, for future proceedings that will be brought by special prosecutors. And I have received reports that game wardens have investigated Tribal members and informing them that information is being reported to their superiors in the ODWC. This situation is intolerable.

For all of these reasons, and in furtherance of the cooperative relationship we have worked hard to establish between the ODWC and the Nation, please confirm that you have retracted ODWC's policy of enforcing Title 29 of the Oklahoma Statutes and Title 800 of the Oklahoma Administrative Code against members of federally-recognized Indian tribes who are hunting and fishing on Indian Reservations, without regard to whether they are complying with Tribal law. In addition, please confirm you have stopped referring citations, issued by your game wardens to members of federally-recognized Indian tribes for alleged conduct on Indian Reservations, to the Governor or his designee so that those citations may be prosecuted by a special counsel in state court.

Given the upcoming deer rifle season, time is of the essence. If I do not receive a response from you by 5 p.m. on Thursday, November 13, I will understand your silence to mean that ODWC's enforcement policy continues to be to enforce Title 29 of the Oklahoma Statutes and Title 800 of the Oklahoma Administrative Code against members of federally-recognized tribes who are hunting and fishing in Indian Reservations, and that ODWC's current procedural policy is to refer citations issued to members of federally-recognized tribes for conduct in Indian Reservations to the Governor or his designee, so that those citations may be prosecuted by a special counsel in state court.

Thank you in advance for your reply and your attention to this matter.

Respectfully,

Matt Gamble
Sr. Manager of Wildlife Conservation
The Choctaw Nation of Oklahoma

cc:   Kara Berst, Deputy Secretary of Outreach and Services, Chickasaw Nation
      Christina Justice, Secretary of Natural Resources, Cherokee Nation

EX. 1

# FIVE TRIBE WILDLIFE MANAGEMENT
# RECIPROCITY AGREEMENT

This Five Tribe Wildlife Management Reciprocity Agreement ("Reciprocity Agreement") was formed through consultations among the Cherokee Nation, the Chickasaw Nation, the Choctaw Nation of Oklahoma, the Muscogee (Creek) Nation, and the Seminole Nation of Oklahoma, and it is hereby made and entered into by and among the Nations signatory hereto ("Nations" or "Nation," as indicated by context).

## ARTICLE 1
## PURPOSE

WHEREAS, the Nations are each independent and federally recognized Indian Tribes, with governments organized under their own constitutions and codes formed by and through the exercise of Tribal sovereignty and which manifest and exercise each Nation's inherent rights to Tribal self-government as secured by Federal law;

WHEREAS, the Nations each possess and exercise the powers of inherent sovereignty over their territories, as recognized and affirmed by Federal law, and all Indian persons within each Nation's Indian country, irrespective of citizenship or membership, 25 U.S.C. § 1301(2); *cf. generally U.S. v. Lara*, 542 U.S. 193 (2004) (confirming that 1991 amendment to Indian Civil Rights Act operated to expand the federally recognized scope of inherent Tribal criminal jurisdiction);

WHEREAS, various courts have confirmed each Nation has a reservation that constitutes Indian country under Federal law, 18 U.S.C. § 1151, and under such Federal law, each Nation has an inherent, recognized, and affirmed sovereign right and authority relating to the regulation and management of wildlife therein;

WHEREAS, each Nation is signatory to treaties that recognize, affirm, and protect its inherent rights to sovereignty and self-governance free from the encroachment of laws enacted by any State;

WHEREAS, among these rights, each signatory Nation's inherent, recognized, and affirmed sovereignty vests it with the authority "to manage the use of its territory and resources by both members and nonmembers," including wildlife resources. *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335 (1983) (citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137 (1982); *White Mountain Apache v. Bracker*, 448 U.S. 136, 151 (1980); *Montana v. United States*, 450 U.S. 544 (1981); 18 U.S.C. § 1161(b); 25 U.S.C. §§ 1321(b), 1322(b) (footnote omitted)); *see also* 18 U.S.C. § 1165;

WHEREAS, Congress imposed as a condition on Oklahoma's formation as a State of the Union that nothing in the new state's constitution could lawfully be construed as limiting, impairing, or otherwise affecting the rights of Indians or the unique legal powers of the United States in Tribal affairs, which powers are expressly delegated to the federal government by the United States Constitution. Oklahoma Statehood Enabling Act of 1906, Pub. L. 59-234, 34 Stat. 267;

**EX. 1**

WHEREAS, Federal courts have confirmed this condition of the Oklahoma Enabling Act as a continuing constraint on Oklahoma jurisdiction within Indian country with respect to Indians, *see, e.g., Indian Country, U.S.A. v. Oklahoma Tax Com'n*, 829 F.2d 967 (10th Cir. 1987) ("The language of the Oklahoma act, read in its historical context, suggests that Congress intended to preserve its jurisdiction and authority over Indians and their lands in the new State of Oklahoma until it accomplished the eventual goal of terminating the tribal governments, assimilating the Indians, and dissolving completely the tribally-owned land base—events that never occurred and goals that Congress later expressly repudiated.");

WHEREAS, in December 2021, the State of Oklahoma, acting by and through its Governor, ended intergovernmental agreements the State had previously formed with the Cherokee Nation and Choctaw Nation of Oklahoma, which agreements memorialized and established mutually beneficial and effective accommodations of separate sovereign interests and rights and neutralized the likelihood of unnecessary intergovernmental conflict by implementing a system for the cooperative management of hunting and fishing;

WHEREAS, the Nations, as an exercise of their respective sovereignties and in the interests of effective inter-Tribal relations and cooperation in the provision of programs to our respective members and citizens, when appropriate, have, through the Inter-Tribal Council of the Five Civilized Tribes, enacted Resolution No. 22-05 in January 2022 and, as a further act of intergovernmental cooperation, formed the Five Tribes Wildlife Management Working Group in April 2023 to, among other things, "develop and propose a cooperative plan . . . to provide citizens and members of the Five Tribes with expanded access to hunting and fishing privileges within the Nations' respective reservations, consistent with conservation standards and applicable tribal and federal law" as well as each Nation's own sovereignty, including its own treaty rights, laws, and conservation standards;

WHEREAS, the Nations recognize the importance of the conservation, management, protection, and enhancement of wildlife resources and habitat for the scientific, educational, recreational, aesthetic, and economic benefits to present and future generations; and

WHEREAS, the Nations, as an exercise of their respective sovereignties and in the interests of effective inter-Tribal government relations and cooperation have formed and entered this Reciprocity Agreement to: (1) recognize and give effect under its own laws each other signatory Nation's licensure, permitting, or authorization of its own members' or citizens' hunting, fishing, trapping, and/or gathering rights or permissions, *provided*, that the hunting, fishing, trapping, and/or gathering activities of any member or citizen of a signatory Nation shall be subject to and must conform with the laws of the signatory Nation on whose reservation such activities occur; and (2) further deepen our intergovernmental cooperation "to support wildlife management and conservation efforts of our neighboring reservations in a way that is sustainable and consistent with each tribe's laws, traditions, culture, and for the benefit of future generations," Inter-Tribal Council of the Five Civilized Tribes, Resolution No. 22-05 (January 14, 2022).

## ARTICLE 2
## RECIPROCAL AUTHORIZATIONS AND WILDLIFE CONSERVATION COOPERATION

**NOW THEREFORE**, the Nations signatory hereto agree as follows:

A. By executing this Reciprocal Agreement, each Nation certifies it has enacted law to regulate wildlife within its reservation, which laws authorize and regulate its members' or citizens' hunting, fishing, trapping, and/or gathering activities as well as the like activities of members or citizens of other federally recognized Indian tribes ("Wildlife Laws"). Each signatory Nation shall make available current copies of its Wildlife Laws, including any amendments thereto (including amendments enacted for purposes of implementing this Reciprocity Agreement), to each other signatory Nation.

B. Each signatory Nation hereby recognizes and will give effect under its own Wildlife Laws each other signatory Nation's licensure, permitting, or authorization of its own members' or citizens' hunting, fishing, trapping, and/or gathering rights or permissions, *provided*, that the hunting, fishing, trapping, and/or gathering activities of any member or citizen of a signatory Nation shall be subject to and must conform with the laws of the signatory Nation on whose reservation such activities occur.

C. By February 28 of each year, each signatory Nation will report to each other signatory Nation basic harvest data collected from its members or citizens pursuant to its laws, as provided in section D. Such data will include, at minimum, all deer and turkeys harvested during the previous season, species, age class, sex, antler points, method of harvest, county of harvest, and reservation of harvest. In no event will any Nation require or report the personal information regarding any member or citizen in such report, and each signatory Nation will take all necessary steps to prevent the transmission of any data it has regarding another signatory Nation's members or citizens to any third party.

D. Each signatory Nation will enact law to require its members or citizens to report, at minimum, all harvests of deer and turkey to an appropriate wildlife agency within the signatory Nation's government, irrespective of where the harvest occurred. Such reports will include, at minimum, the information necessary for the signatory Nation's designated agency to prepare the report required at section C. At the discretion of the Nation on whose reservation the harvest occurred, animals harvested other than deer or turkey may be subject by a Nation's Wildlife Laws to reporting requirements in addition to the minimum stated herein.

E. Each signatory Nation will enact law to prohibit its members or citizens from harvesting separate bag limits within its reservation or elsewhere in the State of Oklahoma. For example: if a cumulative total of four (4) antlerless and two (2) antlered deer may be taken, excluding harvests during special draws and holiday bonus hunts as outlined in the applicable law, no signatory Nation may allow one of its members or citizens to take more than that cumulative total, regardless of where such harvests occur.

F. Each signatory Nation will enact law to require its members or citizens who seek to hunt, fish, trap, and/or gather on another signatory Nation's reservation to comply fully with the wildlife laws of the other Nation that apply generally to such activity. Such enactment will further specify that each member or citizen is responsible for knowing and adhering to the laws of the other Nation when they seek to hunt, fish, trap, and/or gather on that other Nation's reservation, and each member or citizen may be subject to prosecution by the signatory Nation for failing to abide by its laws when hunting, fishing, trapping, and/or gathering on that Nation's reservation.

G. Each signatory Nation will coordinate with each other signatory Nation to provide members and citizens with information regarding the laws applicable within each reservation, including information concerning licensing, tagging, permitting, and other matters pertaining to wildlife conservation. Each signatory Nation will designate and direct an appropriate agency within its government to serve as an information resource on such matters.

H. Each signatory Nation will coordinate with each other signatory Nation with respect to the implementation of this agreement, including full cooperation with respect to each Nation's enforcement of its own Wildlife Laws within its reservation for the purposes of safe hunting and fishing and wildlife conservation.

## ARTICLE 3
## GENERAL PROVISIONS

A. <u>No waiver; retention of rights.</u> Nothing herein, even upon its termination, may be considered or deemed to be a concession by any Nation on any claim to jurisdiction, an admission respecting the same, or a waiver of any right to challenge such a claim. Each signatory Nation expressly and unequivocally reserves its sovereign immunity from any uncontested suit in any forum, and nothing herein may be considered or deemed a waiver of such immunity.

B. <u>Effective Date.</u> This Reciprocity Agreement shall be considered and deemed effective with respect to each signatory Nation upon that Nation's execution hereof and in relation to each Nation that became signatory hereto prior to such later execution and, if executed by an additional Nation thereafter, upon that Nation's later joining of this Reciprocity Agreement.

C. <u>Termination.</u> Any signatory Nation, for any reason, may withdraw from this Reciprocity Agreement by delivering written notice of such withdrawal to each other signatory Nation at the addresses set forth below. Such withdrawal will take effect one hundred twenty (120) days after delivery of such written notice, *provided*, that neither the delivery of notice nor withdrawal shall excuse any signatory Nation from its duty under article 2, section C. to report to the other signatory Nations data pertaining to harvests made during the notice period.

**EX. 1**

**To Cherokee Nation:**

> Cherokee Nation
> Office of the Attorney General
> P.O. Box 1533
> Tahlequah, Oklahoma 74465

**To Chickasaw Nation:**

> Office of the Governor
> The Chickasaw Nation
> P.O. Box 1548
> Ada, Oklahoma 74821

**To Choctaw Nation of Oklahoma:**

> The Choctaw Nation of Oklahoma
> Attn: Legal Department
> 1802 Chukka Hina
> Durant, Oklahoma 74701

**To Muscogee (Creek) Nation:**

> Muscogee (Creek) Nation
> Office of the Attorney General
> P.O. Box 580
> Okmulgee, Oklahoma 74447

**To Seminole Nation of Oklahoma:**

> Office of the Assistant Chief
> Seminole Nation of Oklahoma
> 36645 US-270
> Wewoka, Oklahoma 74884

D. **Common Interest; Mutual Defense.** The Nations have formed this Reciprocal Agreement as an exercise and manifestation of the significant government interest each has in the subject matter. While each Nation reserves its sovereign right to act independently with respect to the needs and concerns of its respective members or citizens, each also hereby commits to a common interest in protecting the integrity of this Reciprocal Agreement. Each Nation further commits to engage cooperatively and jointly in the event of any future legal challenge to: (1) any signatory Nation's sovereignty or rights as exercised within the scope of this Reciprocal Agreement and (2) the exercise of a right secured within the scope of this Reciprocal Agreement by any signatory Nation's member or citizen. In the event of any such future legal challenge, the signatory Nations will

**EX. 1**

endeavor to work together in cooperation and in accord with our manifest common interest in the subject matter for purposes of protecting each Nation's sovereignty and rights to self-government.

E. <u>Amendment.</u> This Reciprocal Agreement may be amended by a writing signed by each signatory Nation in accord with its own laws.

IN WITNESS WHEREOF, the Nations signatory below have each caused this Reciprocal Agreement to be executed by its duly authorized officials as of the dates set forth below and in accord with the executing Nation's own laws.

**THE CHEROKEE NATION**

_____
Chuck Hoskin, Principal Chief
Dated: 7/11/2024

**THE CHICKASAW NATION**

_____
Bill Anoatubby, Governor
Dated: July 11, 2024

**THE MUSCOGEE (CREEK) NATION**

_____
David W. Hill, Principal Chief
Dated: 7-11-2024

**THE CHOCTAW NATION OF OKLAHOMA**

_____
Gary Batton, Chief
Dated: 7-11-24

**THE SEMINOLE NATION OF OKLAHOMA**

_____
Lewis Johnson, Principal Chief
Dated: 7-11-2024