*Cherokee Nation, et al. v. Wade Free, et al.*

# EXHIBIT 14 TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHEROKEE NATION, et al. | ) |
|                   Plaintiffs, | ) |
| v. | ) Civil Action No. |
| WADE FREE, et al. | ) |
|                   Defendants. | ) |

**DECLARATION OF BREK HENRY**

I, Brek Henry, declare as follows:

1. I am over eighteen years of age. I reside in Sallisaw, Oklahoma. I am a citizen of the Cherokee Nation. I am the Conservation Officer for the Cherokee Nation.

2. Before serving the Cherokee Nation, I earned my associates' degree at Connors State College and studied at Northeastern State University. I was then an officer with the Muskogee Police Department from 1991-1994. After that, I worked as a game warden for the State of Oklahoma for thirty years. As a state game warden, I enforced state wildlife laws in my assigned counties and did outreach and education on hunter safety and wildlife conservation. For the last twelve years of my state service, I was a state game warden supervisor. That meant that, in addition to the responsibilities just described, I also supervised other game wardens throughout six counties in northeastern Oklahoma, within the boundaries of the Cherokee Nation Reservation, specifically Rogers, Mayes, Delaware, Ottawa, Nowata, and Craig Counties. I also have personal experience hunting and fishing; I was taught how to hunt and fish by my father and grandfather

**EX. 14**

when I was a child.  I am still an avid hunter and fisherman.  I hunt and fish on the Cherokee Nation Reservation.

3. I began as the Cherokee Nation's Conservation Officer in the Fall of 2024.  My duties are similar to my duties as a state Game Warden—I enforce the Nation's wildlife laws on the Reservation.  I also serve as a resource to Cherokee citizens who have questions about our hunting and fishing code and regulations.  Citizens can reach me by calling a phone number listed on the Cherokee Nation's website.  I also hand out my business card with my direct line.  Part of my job is being a resource for Cherokee Nation citizens with questions about hunting and fishing laws.

4. As a result of this experience, I know very well the process by which state Game Wardens enforce state fish and game laws, and also the ways in which Cherokee Nation citizens understand and seek to comply with fish and game laws.

5. Since the announcement by the Oklahoma Department of Wildlife Conservation ("ODWC") that it would enforce state hunting and fishing laws against everyone on the Reservation, the Nation's Department of Natural Resources has received about one hundred fifteen calls asking about this policy.  Callers are worried.  There is a widespread concern among Cherokee citizens who have called us that their Cherokee hunting license will not allow them to legally hunt this fall.

6. About half the Cherokee citizens that I have talked to about hunting and fishing on the Cherokee Nation Reservation since the ODWC announcement plan on buying a state hunting license.  I believe that many people cannot risk a ticket from a state game warden, because of the cost of paying the fine and the risk that the state may seize their hunting gear. There is certainly a feeling of fear and uncertainty among Cherokee hunters at the prospect of being punished under

**EX. 14**

state law for complying with the Nation's law and hunting under the Nation's laws, as they have done for several years. That concern and uncertainty is going to increase throughout the fall as the rifle season for deer approaches.

7. Additionally, I believe that this uncertainty and worry among Cherokee citizens will be amplified in the spring, when more people will be fishing. Many more people fish than hunt. Many more Cherokee citizens who rely on Cherokee Nation tribal fishing licenses will be at risk of ODWC enforcement, including fines and seizure of fishing gear or boats.

8. However, the other half of Cherokee citizens I have spoken to have told me that they are not going to buy a state license, but they are going to continue hunting or fishing under a Cherokee Nation tribal license. They are doing this because they have treaty rights to hunt and fish under the Nation's laws, without state permission. My experience tells me that a lot of Cherokee Nation citizens will be taking this approach. My concern is that the ODWC is going to issue citations to those people for hunting or fishing without a state license. So those people are going to be subject to punishments that the state has no right to impose.

9. Based on my knowledge of the state's laws and ODWC practices, I believe that, in addition to or in lieu of issuing criminal citations that are then reported to state court, state game wardens will sanction Cherokee hunters on the Reservation under their statutory authority to issue a substitute temporary thirty-day license or issue administrative fees for non-licensing violations of the Oklahoma wildlife code.

10. Oklahoma law gives state game wardens several options upon discovering a violation of the licensing provisions of the state wildlife code while on the field. They may issue a citation and refer the citation to the state District Attorney for prosecution. Alternatively, under Okla. Stat. tit. 29, § 4-112(H)(1), state game wardens may offer those hunting without a license

**EX. 14**

(except those hunting deer, antelope, elk, bear, or turkey), the chance to purchase a substitute temporary license to continue hunting. Under this option, the violator may immediately continue hunting and the license is good for the next thirty days. The price of the temporary license for residents is $100, which is generally less than the cost of a fine they owe under a citation, and for nonresidents it is $300, which is comparable to many citations and may be less than the cost of returning to Oklahoma for a later court date. *See* Okla. Stat. tit. 29, § 4-112(H)(1)(a)-(b). Similarly, under Okla. Stat. tit. 29, § 4-110(E)(1), game wardens may issue a substitute temporary thirty-day license to anyone found fishing without a state license, which allows that person to fish for thirty days and which costs $100 for residents and $300 for nonresidents, Okla. Stat. tit. 29, § 4-110(E)(1)(a)-(b). This is obviously very enticing to people who, on the spot, must decide whether to purchase a temporary license which will let them hunt or fish for another month or instead face prosecution including the expense and hassle of a court date, court fees, and potential financial penalties. But the person purchasing the substitute temporary license is submitting to state law and paying money to the State as a result of an alleged violation of state law.

11. Similarly, if a hunter or fisherman violates other, non-licensing-related provisions of the state wildlife code or regulations, a state game warden may issue an administrative fee instead of requiring bond under Okla. Stat. tit. 29, § 7-208. Upon paying this fee in the field, the violator may continue hunting and fishing without immediate criminal repercussions.

12. Based on my professional experience, these forms of punishing alleged violations of the state wildlife laws generally do not result in the filing of a court case, and so therefore do not appear in court records. They are a preferred enforcement mechanism for state Game Wardens, since they do not require the additional step of sending the charge to the local District Attorney.

**EX. 14**

And the cost of the temporary license or administrative fee is paid directly to ODWC. *See* Okla. Stat. tit. 29, §§ 4-110(E)(2), 4-112(H)(2), 7-208(B).

13. I think it is very likely that since the ODWC announcement, state Game Wardens have used these enforcement mechanisms against Cherokee citizens hunting and fishing on the Reservation, or that they will do so in the future.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated: October 29, 2025

_____
Brek Henry
Conservation Officer
Cherokee Nation

**EX. 14**