IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 4:25-cv-00630-CVE-JFJ |
| | ) |
| WADE FREE, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' SURREPLY TO DEFENDANTS' JOINT MOTION TO DISMISS**

Defendants' assertions that *United States v. Williams*, 898 F.2d 727 (9th Cir. 1990), "obviates the need for any further determination of conservation necessity as to any specific State law also adopted by the Nations," and that Washington and Oregon follow this approach, *see* Defs.' Joint Reply Br. in Supp. of Mot. to Dismiss Pls.' Compl. at 18-19, Dkt. No. 74 ("Br.") (citing *State v. McCormack*, 812 P.2d 483, 485 (Wash. 1991), and *State v. Wagner*, 524 P.3d 564, 566-67 (Or. Ct. App. 2022)), fail for the following reasons.

For starters, *Williams* rejects Defendants' assertion that "[t]he State bears the burden of establishing the conservation standard only when it attempts to impose non-discriminatory regulations on tribal members that are <u>not</u> applicable, or would <u>not</u> be as stringent, under tribal law," Br. 18,[1] by reaffirming that "[b]efore a state can apply its conservation laws to Indians who

---

[1] Although Defendants assert that "the so-called 'conservation necessity' standard" is a "test [the Nations] cobble together" and that Nations' "entire discussion [of that test] misses the point," Br. 18 (citing Pls.' Resp. to Defs.' Joint Mot. to Dismiss at 22-24 & n.29, Dkt. No. 66 ("Pls' Br.")), they do not dispute the legal elements of the reasonable and necessary for conservation standard that the Nations recite, Pls' Br. 22 n.29, which their own brief mirrors, Br. 18.  In sum, "the State must demonstrate that its regulation is a reasonable and necessary conservation measure, and that its application to the Indians is necessary in the interest of conservation," *Antoine v. Washington*, 420 U.S. 194, 207 (1975).

1

have acquired treaty rights to hunt and fish the state must establish that its laws are necessary for conservation purposes." *Williams*, 898 F.2d at 729 (citing *Antoine*, 420 U.S. at 207, and *United States v. Sohappy*, 770 F.2d 816 (9th Cir. 1985)).[2]

Defendants' related assertion that "the Nations implicitly accept that the State of Oklahoma's wildlife laws and regulations are necessary and appropriate for conservation" by adopting those laws, Br. 18-19, fails because the Nations' position is that state regulation of Indian hunting and fishing is not necessary for conservation unless the state first shows that the tribal regulation is insufficient to protect conservation interests. Pls' Br. 24 n.31 (citing *United States v. Washington*, 520 F.2d 676, 686 (9th Cir. 1975)). Defendants ignore that position and have therefore conceded it.

Defendants' reliance on *Williams* to argue "there is no need for a hearing on the issue of conservation necessity if the tribe itself has enacted similar, valid laws," Br. 19 (quoting *Williams*, 898 F.2d at 730), fails for several reasons. First, *Williams* was brought by the United States under the Lacey Act, 16 U.S.C. §§ 3371-3378, against a member of the Nez Perce Tribe for selling moose meat in violation of state law under 16 U.S.C. § 3372(a)(2)(A) and for "possessing, transporting, and selling wildlife in violation of tribal law." *Williams*, 898 F.2d at 728; *see* 16 U.S.C. § 3372(a)(1).[3] The question presented was whether the United States was "required to establish

---

[2] *McCormack* does so as well, 812 P.2d at 484 ("A state may … regulate acts protected by treaty rights when the state shows that its regulation is necessary for wildlife conservation.") (citing *Antoine*, 420 U.S. at 207, and *Williams*, 898 F.2d at 729), as does *Wagner*, 524 P.3d at 566 ("A state may enforce hunting and fishing regulations against a treaty hunter or fisher if it satisfies 'the conservation necessity standard.'") (citing *State v. McCormack* (*Or. McCormack*), 517 P.3d 1033, 1040 (Or. Ct. App. 2022)).

[3] The Lacey Act expressly protects Indian treaty rights by providing that "[n]othing in this chapter shall be construed as—repealing, superseding, or modifying any right … granted, reserved, or established pursuant to treaty, statute, or executive order pertaining to any Indian tribe," 16 U.S.C. § 3378(C)(2).

2

the validity of conservation laws before enforcing such laws against tribe members." *Id.* at 729. As this case is not a Lacey Act prosecution, the holding of *Williams* on that question has no application here.

Second, before turning to the Lacey Act question, the *Williams* court reaffirmed that to apply state law to Indians exercising a treaty right to hunt and fish, the State "must establish that its laws are necessary for conservation purposes." *Id.* at 729 (citing *Antoine*, 420 U.S. at 207; *Sohappy*). Seeking to avoid that burden, the United States argued that "[s]ince the tribe has chosen to outlaw hunting … an individual member cannot assert that right" and that "the government need not prove the conservation necessity of hunting laws." *Id.* The court rejected that argument, holding that the "purpose of requiring the government to prove conservation necessity before imposing its wildlife laws on tribe members is to safeguard the hunting and fishing rights held by the tribes while pursuing the important goal of conservation," and that the government's argument "would essentially lead to the loss of tribal treaty rights in hunting if the tribe chooses to regulate the activity in the same manner as a state," adding that it "interpret[ed] the tribal wildlife regulations as an exercise of treaty rights and not as a disclaimer of those rights." *Id.* That holding rejects the argument Defendants make here.

Third, the court's reliance on tribal law to satisfy the State's burden under the Lacey Act is limited to the Lacey Act. The court found it "significant that the tribe has chosen to outlaw the same form of hunting that the states, through the Lacey Act, have also prohibited." *Id.* Holding that "a showing of conservation necessity applies only to *state* laws incorporated through the Lacey Act" and that "[t]ribal wildlife laws are *per se* valid against tribe members," *id.*, the court found that "[t]he purpose of the Lacey Act is to conserve this nation's wildlife," and held that "[w]e share the assumption made by Congress when it incorporated tribal wildlife laws into the federal

3

conservation scheme through the Lacey Act that such tribal laws serve conservation purposes." *Id.* at 729 n.2.  On that basis, the court concluded that "[t]he requirement of a full hearing to establish the validity of the state wildlife laws is superfluous" as "the tribe [had] enacted similar laws which are clearly valid." *Id.* at 729.

Fourth, under the law of the Ninth Circuit, both pre- and post-*Williams*, effective tribal regulation *defeats* a finding of conservation necessity as "[i]n order to regulate a tribe's fishing rights, the state must demonstrate that the tribe's own conservation measures are insufficient to meet the needs of conservation." *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1283 (9th Cir. 1994) (citing *Washington*, 520 F.2d at 686); *see Or. McCormack*, 517 P.3d at 1041 ("[T]o show that its regulation is a reasonable and necessary conservation measure, … the 'state must demonstrate that the tribe's own conservation measures are insufficient to meet the needs of conservation.'") (quoting *Shoshone-Bannock Tribes*, 42 F.3d at 1283 and citing *Washington*, 520 F.2d at 686); *id.* at 1043 (same); Pls.' Br. 24 n.31.

Defendants' contention that *McCormack* and *Wagner* "adopted the Ninth Circuit's approach in actions brought by the State against tribal members," Br. 19, fails because those decisions misconstrue *Williams* for the reasons just shown, *see supra* at 2-4.  While *McCormack* found that *Williams* was not limited to federal prosecutions, and that the defendant had presented "no reason why a different showing should be required when a state seeks to enforce its own statute in state court," 812 P.2d at 485, *Williams* provides those reasons, by making its holding turn on the Lacey Act, by reaffirming that "the state must establish that its laws are necessary for conservation purposes" in order to apply its laws to an Indian exercising treaty rights to hunt and fish, and by holding that the conservation necessity standard cannot be satisfied by showing that the tribe has chosen to outlaw the activity in question as that "would essentially lead to the loss of

4

tribal treaty rights in hunting if the tribe chooses to regulate the activity in the same manner as a state." 898 F.2d at 729. *See supra* at 2-3.

In any case, neither *McCormack* nor *Wagner* can be read to have the broad application for which Defendants contend, *see* Br. 19. *McCormack* only holds that "the State has established under *Williams* that [Wash. Rev. Code §] 77.16.040 is a necessary conservation measure," 812 P.2d at 486, not that all state statutes that are similar to a tribal law meet that standard.[4] In *Wagner*, the Oregon Court of Appeals simply held that "the tribe's parallel regulation of waste of game meat means that the conservation necessity standard is satisfied with respect to the state's regulation of the waste of game meat." 524 P.3d at 567. Finally, if *McCormack* and *Wagner* were construed to hold that the State's obligation to satisfy the conservation necessity standard is met under all state statutes that are similar to a tribal law, such a construction would be contrary to the decisions of the Supreme Court that establish that standard, *see Antoine*, 420 U.S. at 207, and thus invalid.

## CONCLUSION

For the foregoing reasons, the Nations respectfully request that the Court deny Defendants' motion to dismiss and grant the Nations' motion for a preliminary injunction.

//

//

//

---

[4] As the *McCormack* court observed, the tribal law relied on to make the state statute applicable in the case before it was the same tribal law relied on by the *Williams* court. *McCormack*, 812 P.2d at 486.

Dated:  February 24, 2026	Respectfully submitted,

By: */s/ Michael Burrage*
Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel: 405-516-7800
E-mail: mburrage@whittenburragelaw.com

*Counsel for the Chickasaw Nation and Choctaw Nation of Oklahoma*

*/s/ Frank S. Holleman*
Frank S. Holleman, DC Bar No. 1011376
Douglas B. L. Endreson, DC Bar No. 461999, *pro hac vice*
Anne DeLong, DC Bar No. 90031783, *pro hac vice*
SONOSKY, CHAMBERS, SACHSE, ENDRESON & PERRY, LLP
1425 K St NW, Suite 600
Washington, DC 20005
Tel: 202-682-0240
E-mail:  fholleman@sonosky.com
             dendreso@sonosky.com
             adelong@sonosky.com

*Counsel for the Cherokee, Chickasaw, and Choctaw Nations*

Chad Harsha, OBA No. 31579
Attorney General
CHEROKEE NATION
OFFICE OF ATTORNEY GENERAL
P.O. Box 1533
Tahlequah, OK 74465
Tel: 918-453-5369
E-mail: chad-harsha@cherokee.org

*Counsel for the Cherokee Nation*

6

4919-9255-6430, v. 5

>Stephen H. Greetham, OBA No. 21510, *pro hac vice*
>GREETHAM LAW, P.L.L.C.
>621 Greenwood Road
>Chapel Hill, NC 27514-5921
>Tel: 984-261-7240
>E-mail:  sgreetham@greethamlaw.net
>
>*Counsel for the Cherokee and Chickasaw Nations*
>
>Kaycie Sheppard, OBA No. 21356, *pro hac vice*
>*Chief Executive Counsel*
>THE CHICKASAW NATION
>OFFICE OF EXECUTIVE COUNSEL
>2021 Arlington St.
>Ada, OK 74820
>Tel: 580-310-7925
>E-mail: kaycie.sheppard@chickasaw.net
>
>*Counsel for the Chickasaw Nation*
>
>Brian Danker, OBA No. 16638
>Senior Executive Officer
>DIVISION OF LEGAL & COMPLIANCE
>CHOCTAW NATION OF OKLAHOMA
>1802 Chukka Hina Dr.
>Durant, OK 74701
>Tel: 580-642-7423
>E-mail: bdanker@choctawnation.com
>
>*Counsel for the Choctaw Nation of Oklahoma*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2026, I electronically filed the above and foregoing documents with the Clerk of Court via the ECF System for filing.

*/s/ Frank S. Holleman*
Frank S. Holleman