**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

THE CHEROKEE NATION, et al.       )
                                       )
       **Plaintiffs,**           )
                                       )
v.                                   )      Case No. 25-CV-0630-CVE-JFJ
                                       )
WADE FREE et al.,                )
                                       )
       **Defendants.**         )

## OPINION AND ORDER

Now before the Court is Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and Brief in Support (Dkt. # 47).   Defendants argue that the Court lacks jurisdiction over this case on various grounds, including sovereign immunity and lack of standing.  Defendants also argue that the Court should abstain from hearing the case due to ongoing state court proceedings concerning the same issues.  Plaintiffs respond that state officials do not have sovereign immunity from claims seeking only prospective injunctive and declaratory relief, and there are no ongoing court proceedings between these parties that require the Court to abstain from hearing this case.

## I.

The Cherokee, Chickasaw, and Choctaw Nations brought this case seeking declaratory and injunctive relief to prevent the application of Oklahoma hunting and fishing laws on tribal lands. The nations allege that they entered a series of treaties with the United States beginning in approximately in 1830, and the treaties guaranteed the nations the right to self-government free from the interference of any state.  Dkt. # 2, at 16, 20-22.  Plaintiffs allege that their right to regulate hunting, fishing, and gathering on their lands has consistently been reaffirmed by each successive treaty, and Congress has not abrogated the nations' authority to apply their own wildlife laws to the

activities of their members while hunting, fishing, and gathering on tribal land. Id. at 25-26. Plaintiffs further argue that the admission of Oklahoma as a state did not abrogate the tribes' inherent sovereign authority, and the right to regulate hunting and fishing on their lands falls within each tribes' inherent sovereign immunity. Id. at 26-27.

The Cherokee, Chickasaw, and Choctaw Nations have each adopted a regulatory code governing wildlife management and conservation within their respective reservations, and these laws are supplemented annually with additional regulations. Id. at 29. The laws and regulations are intended to protect public safety, regulate the time, manner, and place of hunting and fishing activities, and  manage plant and wildlife species for conservation purposes. Id. Each nation has hunting and fishing seasons with bag and catch limits, issues permits, tags, and licenses, and requires that members report their harvest of certain species. Id. The state has been provided copies of each nation's hunting and fishing regulations, and Oklahoma Department of Wildlife Conservation (ODWC) wardens are cross-deputized to issue citations for the appropriate Indian nation if they encounter an Indian committing a violation of the rules and regulations on tribal land. Id. at 30. The nations also have a reciprocity agreement among themselves which allows their members to fish and hunt on any nation's reservation, but the reciprocity agreement also limits each person to a single bag limit, regardless of which reservation or even elsewhere in the state of Oklahoma the harvest of wildlife occurs. Id. at 31. The hunting regulations adopted by each of the tribes follow the same seasons and bag limits as the state, meaning that allowing the tribes to enforce their own hunting regulations will not result in the harvest of more wildlife than is permitted by state law. Id. at 35.

On October 7, 2025, Wade Free, the director of the ODWC announced that the state of Oklahoma would begin a policy of uniformly enforcing its own hunting and fishing laws in state

courts, regardless of the Indian status of the land or the offender.  Id. at 45.  One week later, a state game warden issued a citation to Shawn Robertson, a member of the Choctaw Nation, for hunting deer within the boundaries of the Choctaw Reservation without a state hunting license.  Id. at 12. On October 27, 2025, a member of the Chickasaw Nation, Kodie Shepherd, was cited for hunting without a state license and deer hunting without a state deer tag after hunting on the Chickasaw National Recreation Area.  Id. at 13. The Attorney General of Oklahoma, Gentner Drummond, announced that he would not permit "Native American hunters to be prosecuted by the state for hunting in Indian [c]ountry without a state permit when they are otherwise acting in accord with duly enacted tribal law."  Id. at at 46.  The Oklahoma Attorney General's office assumed control of the prosecutions and dismissed the cases.  Id. at 12, 46.  Tribal wildlife officials and Drummond sought assurances from the ODWC that it would cease prosecutions of tribal members for hunting and fishing in Indian country, but the ODWC failed to respond to these requests.  Id. at 46-47.  The Governor of Oklahoma, Kevin Stitt, appointed Russell Cochran to serve as special counsel for referrals of prosecutions for Indians who allegedly violate state law by hunting and fishing on tribal lands without a state license.  Id. at 48-49.  Cochran has initiated new prosecutions of Robertson and Shepherd in state court for allegedly violating state hunting laws.  Id. at 12-14.

The Cherokee, Chickasaw, and Choctaw Nations filed this case seeking prospective declaratory and injunctive relief.  Plaintiffs ask the Court to declare that each of the plaintiff nations has the right to regulate the hunting, fishing, and gathering activities of all Indians on their respective reservations.  Id. at 52-53.  Plaintiffs also ask the Court to enjoin defendants from enforcing state wildlife laws on plaintiffs' reservations and from interfering with plaintiffs' enforcement of their own wildlife laws on tribal lands.  Id. at 55.  The defendants in this case include Free and two other

employees of the OWDC (Nels Rodefeld and Nathan Erdman), Stitt, and Cochran, all of whom are named as defendants in their official capacities.

## II.

Defendants have moved to dismiss the case on the grounds of sovereign immunity, laches, lack of standing, and Younger abstention,[1] and many of these issues concerns the subject matter jurisdiction of the Court to hear this case. Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Where a motion to dismiss is based on a facial attack, as here, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing

---

[1]     Younger v. Harris, 401 U.S. 37 (1971).

any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants contend that they have sovereign immunity from suit because, under Ex Parte Young, 209 U.S. 123 (1908), plaintiffs seek retrospective relief that would essentially award them ownership over state lands, and they argue that plaintiffs delayed for almost one hundred years in challenging the state's right to regulate hunting and fishing on lands that have long since lost their tribal status. Dkt. # 47, at 14-23. Defendants ask the Court to dismiss claims that plaintiffs have asserted on behalf of non-plaintiff Indian tribes and Indians who are not members of the Cherokee, Chickasaw, and Choctaw Nations, and defendants suggest that the Court should abstain from hearing this case due to the pending prosecutions against Robertson and Shepherd. Id. at 24-30. Finally, defendants propose a series of limitations to the scope of plaintiffs' claims and argue that plaintiffs have failed to state claim upon which relief can be granted. Id. at 31-33.

**A.**

Defendants argue that they have sovereign immunity from plaintiffs' claims, because plaintiffs' claims do not seek prospective declaratory or injunctive relief and are barred by Ex Parte Young. Defendants acknowledge that plaintiffs nominally seek prospective declaratory and injunctive relief, but defendants analogize plaintiffs' claim to the one in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), and argue that the relief sought by plaintiffs is similar to a retrospective quiet title action which would be barred by the doctrine of sovereign immunity. Plaintiffs respond that the Court should apply a "straightforward" inquiry to determine whether plaintiffs seek prospective relief only and, under a straightforward inquiry, the Court should find that plaintiffs' claims are not barred by sovereign immunity.

Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States . . . ." U.S. CONST. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). However, the Supreme Court recognized an important limitation on a state's sovereign immunity in Ex Parte Young, which is that sovereign immunity does not bar claims against a state official when the relief sought by the plaintiff would simply prevent the defendant from prospectively violating federal law. Ex Parte Young, 209 U.S. at 159-60. "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and

seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (quoting Coeur d'Alend Tribe of Idaho, 521 U.S. at 296)).

The Tenth Circuit formerly applied a four part test to determine whether Ex Parte Young applies and permits a suit against state officials to proceed:

> First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."

Timpanogos Tribe v. Conway, 286 F.3d 1195, 1205 (10th Cir. 2002). The Tenth Circuit has clarified that the Supreme Court's decision in Verizon Maryland abrogated the fourth step of the analysis, and courts no longer weigh a "special sovereignty interest" as part of the Ex Parte Young analysis. Hill v. Kemp, 478 F.3d 1236, 1259 (10th Cir. 2007). The Tenth Circuit has construed Verizon Maryland as a direction "to proceed immediately in every case to the 'straightforward [or so one might hope] inquiry' whether the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief." Id. (quoting Verizon Maryland, 535 U.S. at 645).

The first and second parts of the test are not in dispute. Plaintiffs have named individual state actors as defendants, and defendants have not challenged that plaintiffs have named appropriate parties under Ex Parte Young. As to the second part, plaintiffs have clearly alleged that defendants have violated plaintiffs' inherent sovereign authority and federal law by attempting to enforce state wildlife laws on tribal land against Indians. Defendants dispute whether the relief sought by

7

plaintiffs properly qualifies as prospective relief, and they contend that plaintiffs are actually seeking a judgment akin to a quiet title action.

Defendants rely on Coeur d'Alene for that proposition a claim seeking the functional equivalent of a quiet title declaration, even if framed as prospective relief, does not fall within the Ex Parte Young exception to a state's sovereign immunity. Dkt. # 47, at 16. The parties in Coeur d'Alene disputed the ownership of the "submerged lands and bed of Lake Coeur d'Alene and of the various navigable rivers and streams that form part of its water system," and the tribe claimed beneficial ownership of these waterways within the boundaries of its reservation." Coeur d'Alene, 521 U.S. at 264-65. The Supreme Court noted that an allegation of an ongoing violation of federal law is ordinarily sufficient to invoke Ex Parte Young, but it found that nature of the tribe's allegations "unusual" in that the tribe's case was the "functional equivalent of a quiet title action which implicates special sovereignty interests." Id. at 281. In fact, the relief sought by the tribe went beyond a simple quiet title action, and the tribe sought a ruling that the disputed land was wholly outside of the regulatory jurisdiction of the state. Id. at 282. The Supreme Court also relied on the historical significance of a state's authority over navigable waterways within its boundaries, which include submerged waterways, and a ruling in favor of the tribe would have affected Idaho's interests "in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." Id. at 287.

Defendants' argument for sovereign immunity is simultaneously based on a dramatic overstatement of the scope of plaintiffs' claims and an expansive reading of Coeur d'Alene. Plaintiffs seek declaratory and injunctive relief confirming that plaintiffs and their members have treaty rights and inherent sovereign authority to hunt, fish, and gather on their reservations without

the "actual or threatened exercise of state jurisdiction and application of state law," and they also argue that they have the right to enter reciprocity agreements with other tribes to regulate the hunting and fishing activities of member and non-member Indians within the boundaries of their reservations. Plaintiffs are not seeking to usurp state authority to regulate the activities of non-Indians on tribal land and, even if plaintiffs are wholly successful on their claims, the state of Oklahoma will still maintain substantial authority to regulate hunting and fishing on tribal lands. This case bears no obvious similarities to Coeur d'Alene, as plaintiffs are not seeking to wholly preempt the state's authority to regulate hunting and fishing within the boundaries of their reservations. Instead, plaintiffs seek a ruling that the state of Oklahoma should prospectively be prohibited from enforcing state hunting and fishing law against Indians on tribal land. In Coeur d' Alene, the tribe sought to claim exclusive authority over waterways within the state of Idaho to the total exclusion of state authority. Plaintiffs' claims in this case are substantially more limited and are not the functional equivalent of a quiet title action. Under a straightforward inquiry, the Court finds that plaintiffs claims are limited to prospective declaratory and injunctive relief that is not analogous to an award of retrospective money damages or an improper usurpation of state authority over its own lands. Plaintiffs have shown that their claims fall within the Ex Parte Young exception to the state of Oklahoma's sovereign immunity, and defendants' request to dismiss the case on the basis of sovereign immunity is denied.

**B.**

Defendants argue that plaintiffs unreasonably delayed in asserting their rights to regulate hunting and fishing within the boundaries of their reservations, and defendants claim that plaintiffs have acquiesced to state authority over these matters. Dkt. # 47, at 23. Defendants rely on City of

Sherrill, New York v. Oneida Indian Nation of New York, 544 U.S. 197 (2005), for the proposition that an Indian tribe's delay in asserting its rights to property can support dismissal on the ground of the equitable defense of laches. Id. at 20. Plaintiffs respond that McGirt[2] halted the state of Oklahoma's long-standing practice of illegally asserting criminal jurisdiction in Indian country, and plaintiffs have not delayed in asserting their treaty and inherent rights based on the Supreme Court's ruling that plaintiffs' reservations were not disestablished. Dkt. # 66, at 28. Plaintiffs also argue that Sherrill has no application to this case and defendants have not shown that the requirements for the equitable defense of laches have been satisfied. Id. at 29-30.

Equitable principles require that a party exercise diligence in protecting its rights, and the defense of laches may bar a claim when "a party, having knowledge of the relevant facts, acquiesces for an unreasonable length of time in the assertion of a right adverse to his own." Jicarilla Apache Tribe v Andrus, 687 F.2d 1324, 1338 (10th Cir. 1982). The defense of laches requires that the party asserting the defense show that the party bringing a claim failed to diligently assert the claim and that the party asserting the defense has been prejudiced because of the delay. State of Kansas v. State of Colorado, 514 U.S. 673, 687 (1995). The Tenth Circuit has explained that courts apply the doctrine of laches with flexibility, and a court should focus on the inequity of allowing a claim to proceed rather than the application of mechanical rules. Biodiversity Conservation Alliance v. Jiron, 762 F.3d 1036, 1091 (10th Cir. 2014). Laches is an equitable defense, and "the existence of laches 'is a question primarily addressed to the discretion of the trial court.'" Mile High Indus. v. Cohen, 222 F.3d 845, 857 (10th Cir. 2000).

---

[2]    McGirt v. Oklahoma, 591 U.S. 894 (2020).

Plaintiffs have alleged that they have long exercised regulatory authority over hunting, fishing, and gathering by Indians on their reservation, and each plaintiff has executed a reciprocity agreement allowing each tribe to enforce its laws against members of other signatory tribes who engage in hunting, fishing, and gathering on its lands. Dkt. # 2, at 28. Plaintiffs state that they have tailored their regulations to mirror the state of Oklahoma's bag limits and seasons, and the state has not identified any conservation concerns caused by the joint exercise of jurisdiction for hunting and fishing on tribal lands. Id. at 35. Plaintiffs contend that they were enforcing tribal fishing and hunting laws on their reservations without interference from the state until October 7, 2025, when a dispute arose among state officials about whether the state should be enforcing its own laws against Indians who hunt and fish within the boundaries of a reservation. Id. at 45. Certain state officials have relied on the Oklahoma Supreme Court's decision in Stroble v. Oklahoma Tax Commission, 588 P.3d 179 (Okla. 2025), for the proposition that McGirt applies only to the narrow issue of criminal jurisdiction under the Major Crimes Act, 18 U.S.C. 1151 (MCA), even though the Attorney General of Oklahoma has taken the position that federal law bars the application of state wildlife laws and regulations against Indians who hunt and fish within plaintiffs' reservations. Dkt. # 2-9; Dkt. # 2-10. In other words, there is a live dispute even among state officials concerning the rights of Indians to hunt and fish on tribal lands, and this lawsuit was brought immediately after this dispute arose.

Defendants have not shown that plaintiffs have delayed in bringing this case or that defendants have been prejudiced by the alleged delay. Plaintiffs brought this case promptly after it became clear that certain state officials were seeking to enforce state wildlife laws against Indians within their reservations, and defendants' arguments ignore the factual allegations of plaintiffs'

complaint and the live dispute among state officials concerning the viability of plaintiffs' claims. Defendants also ignore the effect of the McGirt decision and recent decisions by the Oklahoma Supreme Court concerning the impact of McGirt on the state's regulatory authority on Indian lands. Defendants' contention that plaintiffs have unreasonably delayed in bringing this case is meritless. Defendants have also made no attempt to show that timing of this litigation has in any way prejudiced the state in its ability to enforce its hunting and fishing laws, even if the scope of the state's authority within the boundaries of plaintiffs' reservations is disputed. Defendants still have the authority to enforce hunting and fishing laws against non-Indians throughout the state of Oklahoma, and plaintiffs have not questioned the state's power to enforce these same laws against Indians outside of their reservations.

Defendants argue that Sherrill bars plaintiffs' claims seeking clarification of their authority to regulate hunting and fishing within the historical boundaries of their reservations, because plaintiffs' efforts to regulate these activities over lands they no longer control is equivalent to a belated attempt to regain control over lands that was prohibited by Sherill. Dkt. # 47, at 23. In Sherrill, the Oneida Indian Nation (OIN) entered a treaty in 1788 with the state of New York under which the OIN sold most of its land to the state, but the (OIN) successively sold more land to the state until the OIN possessed only 32 acres by 1920. City of Sherrill, 544 U.S. at 203-07. In 1997 and 1998, the OIN began to repurchase some of the land within its former reservation in open market transactions, and the OIN filed a lawsuit seeking declaratory and injunctive relief that it had no obligation to pay state and local taxes for the recently purchased lands within the boundaries of its former reservation. Id. at 211-14. The Supreme Court discussed several legal doctrines concerning the effect of the passage of time on legal rights, including laches, acquiescence, and impossibility,

and determined that the OIN's long acquiescence to state authority over these lands barred restoration of the OIN's former sovereignty over the lands. Id. at 220-21.

Plaintiffs in this case are not attempting to assert total sovereignty over lands within the historical boundaries of their reservations, but they are seeking to confirm their inherent authority and treaty rights to regulate hunting and fishing over other Indians on these lands. Granting the relief sought by plaintiffs would minimally infringe on the state's authority to regulate hunting and fishing on certain lands, and plaintiffs have asserted colorable claims concerning the division of regulatory authority within the boundaries of plaintiffs' reservations. This case is nothing like Sherrill in which an Indian tribe attempted to wholly restore tribal authority over lands that had been in possession of a state for almost 200 years. Plaintiffs are not seeking to wholly exclude state authority over the state's own citizens on any land within the boundaries of the state of Oklahoma, but they are relying on the Supreme Court's relatively recent decision in McGirt to assert regulatory authority over their own citizens and other Indians on tribal lands. The Court does not find that plaintiffs have delayed in bringing this action to clarify the division of state and tribal authority over hunting and fishing within the historical boundaries of plaintiffs' reservations, and defendants' request to dismiss the case based on the equitable defense of laches is denied.

## C.

Defendants argue that plaintiffs lack standing to assert claims on behalf of non-plaintiff tribes, and defendants also argue that plaintiffs lack parens patriae standing to bring claims "on behalf of non-member Indians (including, for example, Cherokee citizens hunting within Choctaw Indian country, or Creek citizens hunting within the Indian country of any of the Plaintiff Nations)." Dkt. # 47, at 24. Plaintiffs respond that they have not asserted any claims falling within either

13

category identified in the motion to dismiss, and plaintiffs clarify that they are bringing claims on their own behalf to determine the scope of their own sovereign authority over hunting and fishing on their lands.  Dkt. # 66, at 26.

Article III of the United States Constitution limits federal courts to the adjudication of cases or controversies.  U.S. CONST. art. III, § 2, cl. 1.  "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate."  Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004).  "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision."  Kane County v. United States (Kane III), 928 F.3d 877, 888 (10th Cir. 2019).  The standing requirement ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).  The primary focus for any analysis of standing under Article III "is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury."  Morgan v. McCotter, 365 F.3d 882, 888 (10th Cir. 2004).  Further, while "[t]he plaintiff must show that a favorable judgment will relieve a discrete injury, [] it need not relieve his or her every injury."  Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005).  The party invoking the jurisdiction of a federal court has the burden to establish Article III standing.  New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

The Court has no difficulty in concluding that plaintiffs have standing to bring the claims asserted in their complaint. Plaintiffs have alleged that they have been injured by defendants' efforts to enforce state wildlife laws against Indians within their reservations, and the injury is based on the harm to plaintiffs' sovereignty, rather than any harm allegedly suffered by the individual member or non-member Indians who seek to hunt and fish on tribal lands. Defendants' infringement on plaintiffs' tribal sovereignty plainly constitutes an injury in fact that is sufficiently concrete and particularized to establish standing. Ute Indian Trie of the Uintah and Ouray Reservation v. Utah, 790 F.3d 1000, 1005 (10th Cir. 2015); Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1255 (10th Cir. 2006). Defendants contend that plaintiffs are trying to create a case or controversy "by agreeing among themselves, and other non-Plaintiff tribes, to enforce their respective regulations against non-member Indians," and defendants also complain that plaintiffs are attempting to assert claims on behalf of non-member Indians. Dkt. # 47, at 25. This argument ignores the actual allegations of plaintiffs' complaint and restates plaintiffs' claims as if they were being asserted by non-parties. The complaint references the rights of member and non-member Indians to hunt and fish on tribal lands, but these allegations are framed in terms of the plaintiffs' rights to regulate these activities on each nation's reservation pursuant to their reciprocity agreement. Plaintiffs allege that defendants have infringed on tribal sovereignty to regulate the hunting and fishing activities of Indians on plaintiffs' reservations, whether the Indian is a member or non-member, and the Court can grant the requested relief without considering the claims of individual Indians or non-plaintiff tribes. Defendants have failed to show that plaintiffs' claims should be dismissed due to lack of Article III standing.

**D.**

Defendants argue that plaintiffs seek relief that would halt ongoing prosecutions of Indians for hunting and fishing on state land without a state license, and they ask the Court to abstain from hearing this case under Younger v. Harris, 401 U.S. 37 (1971).[3]  Plaintiffs respond that they are not parties in the state court wildlife prosecutions against individual tribal members, and they cannot raise their claims in the state court proceedings.  Dkt. # 66, at 20-21.

"Under the Younger abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief–such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-' when a state forum provides an adequate avenue for relief."   Weitzel v. Division of Occupational and Professional Licensing of Dep't of Commerce of the State of Utah, 240 F.3d 871, 875 (10th Cir. 2001).   The Supreme Court had made clear that the circumstances giving rise to Younger abstention must be "exceptional," and Younger abstention is triggered only by state proceedings falling into one of the following categories: "(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial function." Travelers Casualty Ins. Co.

---

[3]   Defendants cite the Anti-Injunction Act, 28 U.S.C. § 2283, but they do not make a distinct argument that the Anti-Injunction Act bars consideration of plaintiffs' claims.  Instead, defendants argue that Younger prohibits the Court from interfering with ongoing state prosecutions under state wildlife laws.  Defendants provide more extensive arguments concerning the applicability of the Anti-Injunction Act in their reply, but these additional arguments should have been raised in their motion to dismiss.  See Dkt. # 74, at 16-17; Kesters Merchandising Display Int'l, Inc. v. SurfaceQuest, Inc., 163 F.4th 1309, 1313 (10th Cir. 2026) (prohibiting a party from raising new arguments in a reply brief). The Court declines to treat defendants' motion as raising a separate Anti-Injunction Act argument, as defendants have made no attempt to develop this argument outside of the context of Younger abstention.

of America v. A-Quality Auto Sales, Inc., 98 F.4th 1307, 1317 (10th Cir. 2024) (quoting Graff v. Aberdeen Enterprizes, II, Inc., 65 F.4th 500, 522 (10th Cir. 2023)).  If the state proceedings fall within one of the enumerated categories, the district court must consider three factors to determine whether Younger abstention is appropriate:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

Chapman v. Oklahoma, 472 F.3d 747, 749 (10th Cir. 2006).  These three factors are known as the Middlesex[4] factors, and the Supreme Court has clarified that these factors are not dispositive for the application of Younger abstention.  Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 80-82 (2013) (clarifying that the Middlesex factors are treated as additional factors once the party invoking Younger abstention has shown that the proceeding to be enjoined falls within the category of criminal or quasi-criminal proceedings appropriate for the consideration of Younger abstention).

The Court will assume that a state court proceeding to enforce state wildlilfe laws is at least quasi-criminal in nature, and this would potentially trigger the application of Younger abstention. The Court also finds that both parties have important sovereign interests in the enforcement of their wildlife laws,  and defendants can establish that the third element for Younger abstention is satisfied.[5]  The heart of the parties' dispute concerns whether state courts provide an adequate forum

---

[4]    Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982).

[5]    Plaintiffs' response essentially argues that defendants do not have an important state interest because defendants are unlikely to be successful in defending against plaintiffs' claims on the merits.  Dkt. # 66, at 22-23.  The Court finds that plaintiffs and defendants have equally significant interests in determining the scope of their authority over hunting and fishing on lands subject to tribal jurisdiction, and the Court will consider the arguments raised by plaintiffs when ruling on the pending motions for preliminary injunction.

for plaintiffs to litigate the issues raised in their federal complaint. The Court initially notes that there are three plaintiff Indian tribes, but the parties have identified two state court prosecutions involving members of the Choctaw and Chickasaw Nations. Defendants have made no attempt to show that the Cherokee Nation could even potentially raise its claims in a state court forum and, at a minimum, defendants' request to invoke Younger abstention has no applicability to the Cherokee Nation's claims in this case.

Defendants argue that plaintiffs have an adequate state court forum to litigate claims asserted as parens patriae on behalf of tribal members, but defendants do not actually suggest that individual tribal members can adequately represent the sovereign interests of an Indian tribe. Dkt. # 47, at 29. However, defendants seek the dismissal of the entire case, even though they have made no attempt to show that all of plaintiffs' claims could be heard in the state court forum. The primary focus of plaintiffs' claims concerns the authority of the tribes to regulate hunting and fishing on tribal lands, and plaintiffs deny that it even necessary for them to assert parens patriae claims. Dkt. # 66, at 26 n.13. Defendants appears to be arguing that an individual tribal member seeking to avoid a state prosecution for the misdemeanor offense of hunting without a state license would effectively represent the sovereign interests of the plaintiff tribes, because the parens patriae claims that could be asserted by the tribes are derivative of the defenses that could be asserted by the individual tribal member in the state court prosecution. Dkt. # 47, at 29-30. There may be cases when the parties in pending state and federal cases are sufficiently aligned that Younger abstention may apply, even if the identity of the parties in both cases is not identical. See D.L. v. Unified School Dist. No. 497, 392 F.3d 1223 (10th Cir. 2004) (dispute between family and school district substantially involved the same parties when the parents of the children were attempting to vindicate the rights of the

children in both forums, even though the minor children were named as parties in the federal case only). However, this is not such a case and plaintiffs would be wholly denied a forum to litigate their claims of tribal sovereignty to regulate hunting and fishing on their lands if the Court invoked Younger abstention. Therefore, the Court finds that the state wildlife prosecutions are not an adequate forum for plaintiffs to litigate their federal claims and Younger abstention is not warranted in this case.

**E.**

Defendants ask the Court to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) based on their prior arguments and additional proposed limitations to the scope of plaintiffs' claims. Defendants ask the Court to assume that the state of Oklahoma does not enforce its wildlife laws against Indians who hunt and fish on Indian allotments or trust land, that the state does not require land owners to obtain a license to hunt and fish on their own lands, and that Indians are treated just like any other Oklahoma resident outside of trust land. Dkt. # 47, at 31-32. Based on these assertions, defendants contend that the Court should consider only whether "the Nations are entitled to prospective injunctive relief that would create a system of concurrent, tribal citizenship-based regulation over hunting and fishing on fee lands within the three Plaintiff Nations' Indian country." Dkt. # 47 at 32. The Court has already rejected each of the arguments raised by defendants in their motion to dismiss, and the Court will not dismiss plaintiffs' claims based on defendants' proposed revisions to the scope of plaintiffs' claims. Plaintiffs have asserted colorable claims that they have treaty rights and the inherent authority to regulate hunting and fishing on their lands, and the parties dispute the scope of the lands over which plaintiffs can exert authority over Indians without state regulation of the same activities. Defendants are essentially asking to resolve the merits of the case

in their favor based on a narrow view of plaintiffs' claims supported by allegations not found in plaintiffs' complaint.  Defendants have made their position clear that they dispute plaintiffs' claim that <u>McGirt</u> expanded the civil jurisdiction of Indian tribes to all lands within the historical boundaries of their reservations, but plaintiffs have the right to litigate this claim to a conclusion based on the Court's determination that it has subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and Brief in Support (Dkt. # 47) is **denied**.

**IT IS FURTHER ORDERED** that the parties shall file an updated joint status report concerning a proposed schedule for final resolution of plaintiffs' claims no later than **June 25, 2026**.

**DATED** this 11th day of June, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE